Rafael Saurí, demandante-àpelante-apelado, *v.* José Saurí, Carmen Saurí e Isabel Tristani Viuda de Saurí, demandados-apelados-apelantes.

No. 3549. *Sometido:* Enero 15, 1929. *Resuelto:* Abril 30, 1929.

*Tous Soto & Pérez Marchand*, abogados del apelante-apelado; *F. Parra Capó* y *José* y *Alberto S. Puventud*, abogados de los apelados-apelantes.

EL JUEZ ASOCIADO SEÑOR TEXIDOR, emitió la opinión del tribunal.

Rafael Saurí presentó, ante la Corte de Distrito de Ponce, una demanda contra José Saurí, Carmen Saurí e Isabel Tristani, viuda de Saurí. En esa demanda se alegó que demandantes y demandados, como herederos de Félix Saurí y Vivas, por medio de escritura pública, se dividieron entre sí los bienes de herencia del susodicho, adjudicándose un condominio de la mitad a doña Isabel Tristani, y el condominio de la otra mitad, por terceras partes a los herederos don Rafael, don José y doña Carmen Saurí; se describen los bienes, que son varias casas y solares, fincas rústicas, y acciones de Santa Isabel Sugar Company, Crédito y Ahorro Ponceño, y Banco Comercial; se alega que el demandante y los demandados, por la misma escritura constituyeron una comunidad de bienes, en la forma que aparece de la cláusula 17 de la escritura, y que la comunidad se estableció por término indefinido, que finalizaría a voluntad de cualquiera de sus miembros; que los condueños José y Carmen Saurí han notificado al demandante que desean cesar en la comunidad; que los bienes de ésta son susceptibles de cómoda división, excepto las fincas urbanas, que no lo son; que durante la administración de la comunidad por el demandante, tal comunidad adquirió 82 bueyes, 55 acciones del Crédito y Ahorro Ponceño, 20 acciones de Santa Isabel, una bomba instalada por valor de $15,907.17, y otros bienes; y que los condueños no se han podido poner de acuerdo en cuanto a la división de los bienes comunes; y, en cuanto a esta causa de acción, pidió en la súplica que se decretara la división de las fincas rústicas en partes correspondientes a los condominios; que las fincas urbanas se vendan en pú-

blica subasta, y se distribuya el precio; que los muebles y semovientes se dividan en lotes; que para la división, en lotes, de las rústicas se nombren tres *referees* que hagan la división y presenten el informe a la corte para aprobación; y la condena de costas.

En la demanda se ejercitó otra causa de acción, de la que no hemos de tratar por hallarse resuelto el recurso que se refiere a la misma. (38 D.P.R. 765.)

Excepcionaron los demandados, y una vez que se declaró sin lugar la excepción, contestaron a la demanda, con los siguientes extremos esenciales: Admitiendo la existencia de comunidad, y la de los bienes, pero adicionando que en la finca San Antón o Cuatro Calles existe una bomba con diez pozos a distancia regular, y que permite el riego y cultivo de caña en la finca; y que hay además un desvío de vía férrea, una grúa para cargar caña, y casas de vivienda y de mayordomo; que una de las fincas, antes de ser adquirida, se componía de otras tres: la "Constancia," con concesión exclusiva de agua, bomba, almacén, casas para peones, otra para mayordomo, ranchón y herrería; y las haciendas "Parnaso" y "Playa" también con concesiones de agua, utilizando una bomba; y que esas fincas a los fines del riego, continúan separadas; que las fincas rústicas descritas en la demanda han sido utilizadas siempre por las partes en el pleito como una sola explotación, dedicadas a caña de azúcar, sembrada en los terrenos a propósito, y dejando el resto para pastos, y utilizándose los implementos como para una sola explotación, hallándose sometidas a un contrato de cultivo y molienda con la corporación "Saurí y Subirá"; aceptan la divisibilidad del ganado y acciones, y niegan la de los demás bienes en su esencia, y por no admitir cómoda división; y en cuanto a las rústicas especialmente porque la división tendría que hacerse, no en cuatro partes, sino en muchas más, dada la forma en que están repartidos los terrenos para cañas, y los para pastos, lo que haría desmerecer la propiedad, y en cuanto a las fincas en el barrio de San

Antón, porque toman el agua de la bomba y los diez pozos, y no pudiéndose dividir la·bomba, el reparto de las tierras traería como resultado que algunos de los condueños tuviera que abandonar el cultivo de la caña, o hacer grandes gastos, y que la bomba y los pozos quedarían sin dividir, y lo mismo las casas, el desvío y la grúa, y porque la.finca que se marca con el número 8 se halla dividida, a los efectos del riego, en otras tres, con concesión exclusiva cada una para·la toma de agua, procedente de distintos ríos, y sería necesario dividir las concesiones, quedando siempre en indivisión los canales principales, la toma de agua y la bomba, y que trabajándose las fincas como una sola explotación están dotadas del material e implementos necesarios, que son en su mayoría indivisibles, y que el reparto entre cuatro personas, obligaría a éstas a adquirir más material, con grandes gastos, y además porque la división ocasionaría el establecimiento de distintas servidumbres; y porque las fincas están sujetas a un solo contrato de cultivo y molienda; y porque la división haría desmerecer las fincas grandemente. Admitieron la adquisición de bienes durante la comunidad, y entre los adquiridos, la bomba, respecto a la que alegaron no ser divisible, porque forma un todo que quedaría.inútil si se dividiera, y lo mismo las bombas, desvíos, canales, casas y máquinas. Admitieron que no han llegado a acuerdo en lo que toca a la disolución de comunidad en las fincas rústicas con sus pertenencias, pero no así en cuanto a las urbanas y los valores cotizables. Y pidieron: que se distribuyan las acciones proporcionalmente;. que los muebles y semovientes se dividan en lotes proporcionales; que los demás bienes se vendan en pública subasta al mejor postor.

La corte, después de celebrado el juicio y oída la·prueba, dictó sentencia que, en lo que se refiere a esta causa de acción, ordena y decreta que los bienes semovientes y muebles de la comunidad se dividan en lotes proporcionales al interés de cada partícipe; que las fincas urbanas se vendan

en subasta pública al mejor postor, y se divida el producto entre los dueños proporcionalmente; que las fincas rústicas se dividan en lotes que se adjudiquen a cada uno de los partícipes, "adjudicándose a cada uno de éstos una porción de terreno en cada finca proporcional a su condominio," y ordenándose el nombramiento de tres árbitros, uno por cada una de las partes, y el tercero a nombrar por la corte, para proceder a la división y someter un informe a la corte para aprobación. Y resuelve asimismo en cuanto a la segunda causa de acción, que no es objeto de este recurso.

En esta apelación tenemos que considerar, en primer lugar, una moción para desestimar, presentada por la parte demandante y apelada. Esta moción ha sido discutida con toda amplitud, y con gran lucidez, por ambas partes, que han presentado alegatos que revelan profundo y concienzudo estudio de la materia. Pero creemos que la cuestión a resolver no trae envueltas serias dificultades.

La moción se funda en que:

(*a*) La sentencia fué notificada al abogado de los demandados el 25 de octubre de 1924, y éste apeló en fecha 22 de noviembre de 1924, o sea 29 días después de la notificación.

(*b*) Que de acuerdo con el número 3º del artículo 295 del Código de Enjuiciamiento Civil la apelación contra sentencia interlocutoria en pleito sobre partición de propiedad real, debe interponerse dentro de los diez días de dictada y registrada la sentencia.

(*c*) En la sentencia en este caso, si bien es definitiva en cuanto a la reclamación de sueldos y cantidades, es solamente interlocutoria en lo que se refiere a la división de los bienes, toda vez que para llevar a efecto la división es preciso nombrar árbitros y que éstos hagan y sometan un informe, y entonces dictará la corte sentencia definitiva.

En la forma en que la demanda plantea ante la corte el problema, éste no es otro que el de si cabe, o no, ordenar que se proceda a la división de los bienes, como una lógica

consecuencia de la disolución de la comunidad. El deman-
dante ha pedido a la corte que decrete la división de las
fincas rústicas, la venta de las urbanas y la división de su
producto, la división en lotes, y adjudicación, de semovien-
tes y muebles, y el nombramiento de árbitros para hacer la
división de las rústicas. Desde luego, su posición para sos-
tener ahora que el nombramiento de árbitros, y su interven-
ción, obstaculiza la creencia de que la sentencia sea final y
definitiva, no es fuerte. El demandante pidió una sentencia
de la que fuera parte integrante esa medida; y no hay que
suponer que lo pidió para otro objeto que para obtener re-
solución final. Podemos decir que ni esa petición en la de-
manda, ni la declaración que a ella corresponde en la sen-
tencia, son absolutamente necesarias, si bien no redundan.
Pero, en realidad, ésa es una medida para la ejecución de la
sentencia, y puede solicitarse y decretarse después de ser
aquélla firme; no es una parte indispensable en la resolu-
ción del caso, si bien lo es en la ejecución de lo resuelto.

Del estudio y comparación de las peticiones de la de-
manda y las de la contestación, aparece con toda claridad
que el punto en contienda no es otro que la división de las
fincas rústicas; división que pide el demandante, fundán-
dose en que las fincas son por su naturaleza divisibles; y a
la que se oponen los demandados, fundándose en que no lo
son, al menos todas ellas, y en que, de serlo, la división sería
incómoda y haría desmerecer los bienes. Quedó, pues, re-
ducida la cuestión a ese extremo. Y la corte decidió, en
síntesis, que los bienes eran divisibles, y que la comunidad
podía y debía resolverse; y en la sentencia fijó el modo y
forma de la división, y el cuánto de las participaciones.
¿Puede, en derecho, irse más allá, judicialmente, de lo que
ha ido la corte en esta sentencia? Si una parte ha soste-
nido la afirmativa en cuanto a la divisibilidad, y su derecho
a que la comunidad se extinga, y la otra la negativa, la
corte al decidir en favor de la teoría legal de una de las
partes ha resuelto definitiva y finalmente sobre los derechos

de las partes en el pleito. La ejecución de la sentencia, se llevará a cabo por la intervención de los árbitros, intervención que no es de carácter judicial, sino puramente técnica, o, si se quiere, ministerial. Y la sentencia así dictada, se halla dentro de las condiciones, y tiene los elementos que señala el artículo 188 del Código de Enjuiciamiento Civil.

En esta jurisdicción, y en el caso *Mazarredo* v. *García,* 31 D.P.R. 771, hemos declarado que

"Una orden eliminando la demanda enmendada por ser substancialmente igual a la original, y condenando en costas, gastos y honorarios al demandante, y que observa las formas de una sentencia, tiene el carácter de sentencia final."

En el caso *Oronoz* v. *Román,* 26 D.P.R. 25, se trataba de una comunidad de bienes cuya extinción se reclamaba por el demandante; la sentencia fué dictada en 2 de noviembre de 1916, y apelada en 2 de diciembre del mismo año; en ella se declaró terminada la comunidad, y se ordenó la venta en pública subasta, del inmueble de que se trataba. En la opinión de este tribunal se dijo:

"Una sentencia, según está definida por la misma ley, es la decisión definitiva sobre los derechos de las partes en un pleito o procedimiento. Artículo 188 del Código de Enjuiciamiento Civil. El secretario deberá llevar, con el protocolo de la corte un libro que se titulará 'Libro de Sentencias,' en el cual se registrarán éstas, dice el mismo código en su artículo 231.

"En el presente caso se celebró un juicio en corte abierta y el pleito quedó sometido a la corte. Luego ésta archivó su sentencia por escrito decidiendo definitivamente los derechos de las partes, y el secretario la registró en el libro de sentencias. El hecho de que en la sentencia aparezcan las palabras: 'dada en Cámara,' no tiene importancia a nuestro juicio."

La moción para desestimar la apelación debe declararse sin lugar.

En cuanto a la apelación presentada por los demandados, ella se funda en dos señalamientos de error. El primero de ellos se refiere a la imposición de costas a los de-

mandados; y el segundo, al decreto de división de las fincas rústicas en forma de parcelas, y no en la forma de venta en pública subasta, como han solicitado los demandados.

En cuanto a la imposición de las costas a los demandados, el error en la sentencia es manifiesto y palmario.

La demanda contenía dos causas de acción: una, la de división de bienes de comunidad, y otra la de pago de servicios. En relación con la primera, los demandados han admitido y aceptado la partición de determinados bienes, y aun en la forma que en la demanda se propone, y han resistido la partición de otros, y para su caso, han pedido que se hiciera la venta, y la división del producto, lo que en realidad es una forma de partición. La sentencia es adversa al demandante, por lo que afecta al pago de cantidades por servicios; y en lo que atañe a la partición, resuelve en el sentido de la venta de acciones y ganado, y de las fincas urbanas, y decreta la división de las rústicas en forma parcelaria, y no en venta en subasta pública: éste es, en realidad, el punto a que ha venido a concretarse el litigio.

La oposición a la división de las rústicas y a la forma en que se pide en la demanda, tiene un fundamento en la interpretación de la ley; no es una oposición caprichosa, insostenible e irrazonable; tiene, como todas estas materias, un pro y un contra, aspectos distintos, y hasta antagónicos, perfectamente discutibles. No puede, en buena lógica, decirse que de parte de los demandados haya habido temeridad. Mejor podría afirmarse que la hubo de parte del demandante al ejercitar acción en reclamación de cantidad por servicios.

Si no puede sostenerse la existencia de mala fe o temeridad en una persona que litiga, más que cuando no existe nada que justifique su acción o su defensa (Martínez v. Padilla, 19 D.P.R. 582); si es base de la declaración de temeridad la falta de razón en la parte para sostener su acción o sus defensas (Vivas v. Hernaiz, Targa & Co., 24 D.P.R. 836); y si cuando del examen de la cuestión en litigio se

llega a la conclusión de que los extremos de hecho y de derecho eran enteramente debatibles, no pueden imponerse costas a una de las partes (Nevares v. Nevares Hermanos, 37 D.P.R. 857), no han debido imponerse a los demandados las costas en este pleito. El error en este particular es manifiesto.

El segundo señalamiento exige un examen más extenso. Se han presentado tantas cuestiones, se ha hecho la cita de autoridades con tal profusión, que es fácil olvidar algún extremo importante.

Entre los bienes que se describen, como sujetos a división, están los siguientes:

1. La estancia San Antón, de 113 cuerdas de terreno, para cañas, pastos y arbolado, y en la que se contienen cuatro casas de madera, una bomba para riego, con diez pozos de tubos, una grúa y un desvío de vía férrea, casa de mayordomo y casa para vivienda. La demanda relaciona solamente las cuatro casas; pero del caso resulta la existencia de las otras casas, desvío, etc. La bomba aparece en la demanda por separado, si no estamos equivocados.

2. Una finca de una extensión de una cuerda y seis varas; y otra de veinte y cinco centésimas de cuerda.

3. La hacienda para cultivo de caña, llamada "Constancia," con 994 cuerdas 33 centésimas de otra, de terreno, en parte dedicado a cañas, otra a pastos, y otras a plaza y callejones, con represa en el río, canales, dos concesiones de agua, casas para vivienda, y para el peonaje, casas para máquinas, almacén, otras casas, bomba, etc. Está situada en el término municipal de Ponce.

Respecto a esas fincas los demandados sostienen que no son divisibles, por su naturaleza, y porque la división resultaría perjudicial para los condueños.

Un primer motivo alegado por los demandados consiste en que tratándose de una sola explotación agrícola que requiere tierras propias para cañas y otras para pastos, la división entre cuatro condueños, en partes o porciones di-

versas, y no en cuatro parcelas, sino en muchas más, dada la forma en que se hallan los terrenos, traería un gran desmerecimiento para las propiedades envueltas.

No estamos conformes con este argumento. El artículo 408 del Código Civil de Puerto Rico, estatuye que los propietarios no pueden exigir la división de la cosa común, cuando de hacerse, resulta la cosa inservible para el uso a que se destina. En puridad, hay un conflicto, en el campo del derecho fundamental y filosófico, entre la libertad del condómino para no permanecer en la comunidad, y el perjuicio que a los copropietarios pueda seguirse por razón de la división de las cosas comunes. Y la ley ha resuelto ese conflicto en el sentido de respetar la libertad de los que no quieren permanecer en ese estado, y desean fijar su propiedad de una manera más tangible y perfecta. Sólo en el caso de que el valor de la cosa común se destruya, haciéndose la cosa inservible, se recorta y anula el derecho del comunero. Pero no en el de que la división haga simplemente desmerecer, o decrecer, el valor de las cosas.

No obsta a lo que venimos diciendo la regla del artículo 413 del código y su correlativa del artículo 1029; antes nos parece que la confirma y corrobora. Declaramos que, en cuanto a la división entre comuneros, cabe la aplicación de las reglas para la división de la herencia, en cuanto no haya conflicto fundamental entre una y otra institución. Y así, cabe que se pida y se obtenga la adjudicación con compensación por exceso, y la venta en subasta, en sus casos. Pero esto, que puede ser un modo de suplir la división material, o de sustituir con el valor en venta, el valor material, el valor en uso y disfrute de la porción o participación en la cosa que fué común, no es un principio declaratorio del carácter de indivisibilidad, sino una regla de puro espíritu utilitario y circunstancial. El artículo 1029 del Código Civil contiene dos extremos: uno, el de ser la cosa indivisible;

otro, el de que la división haga desmerecer mucho la cosa dividida. El primero de ellos fundamental y absoluto; el segundo utilitario, relativo, circunstancial.

La consecuencia extraída por los ilustrados abogados de los demandados es extremada, va demasiado lejos. Dicen así en su alegato:

"De modo que no es solamente indivisible legalmente una cosa cuando resulte inservible para el uso a que se la destina, sino también cuando desmerece mucho por su división."

No es ése el espíritu, ni ésa la letra, de la ley. Entre la cosa indivisible por su naturaleza, y la posibilidad de pérdida de valor por consecuencia de la división, hay una gran diferencia.

Se nos cita la sentencia del Tribunal Supremo de España de 14 de junio de 1895, en esta forma:

"Para resolver sobre la divisibilidad de una cosa común hay que atender antes que nada a la esencia de los bienes; y si la división impone un gasto considerable a los partícipes y los beneficios serían menores que explotados en comunidad, disminuyendo por tanto su valor, no deben dividirse."

Hemos examinado la sentencia a que se refieren los apelantes. Encontramos que en aquel caso se trataba de una finca urbana cuya división requería una obra importante y costosa, y ocasionaba una merma en el valor en sí, y en el valor en renta en las resultantes de la división. La sentencia del juzgado ordenó la venta de la finca en pública subasta, y la Audiencia confirmó el fallo del inferior. El Tribunal Supremo declaró no haber lugar al recurso de casación contra la sentencia de la Audiencia. El primer motivo legal, o *considerando* de la sentencia, dice:

"Considerando que la sentencia no infringe los artículos 401 y 404 del Código Civil, citados en el primer motivo del recurso, porque si bien la casa en cuestión, es, como todos los bienes corporales, por punto general, divisible materialmente, no lo es por su esencia, toda vez que la división impondría un gasto considerable a los partícipes, las dos casas resultantes quedarían en malas condiciones de solidez,

y los productos de ellas menores de los que hoy obtienen sus condueños, y por lo tanto, menor su valor, circunstancias todas que sirven de fundamento a la sala sentenciadora para declarar, acertadamente, indivisible por su esencia y por su naturaleza, la casa de que se trata.''

Aun siendo respetable la autoridad que se invoca, quizá no podemos estar conformes con todos los razonamientos del Tribunal Supremo de España. En primer lugar, porque nos parece un poco indeterminado el concepto de divisibilidad y es más que probable que en el que la sentencia acepta se hayan confundido las causas puramente jurídicas con las utilitarias y circunstanciales. Así la consideración de la merma en las rentas o productos, nos parece que para nada puede influir en el concepto jurídico de la divisibilidad, ya que el producto o renta depende de un gran número de condiciones, inestables. La consideración del gasto que impone la división, no puede ser tampoco un elemento absoluto.

Encontramos sí, la diferencia entre el concepto de divisibilidad material, que es propio de todas las cosas corporales, y el de divisibilidad legal, que es de tenerse en cuenta en relación con las circunstancias. Un cosa puede ser susceptible de material división; pero si las cosas producto de tal división quedan sin valor, o desmerecen *mucho* (Art. 1029, Código Civil), o cuando la división deja inservible la cosa para el uso a que se destina (Art. 408, Código Civil) entonces no cabe, *legalmente,* realizar una división que la cosa podría sufrir *materialmente.* El obstáculo no es de la esencia de la cosa, sino de la disposición de la ley. Pero, aun entonces, no se reduce y cohibe la libertad del comunero para no permanecer en la comunidad, sino que la ley crea la solución que sustituye la división de la cosa misma por la división de su valor en venta.

Para nosotros es indudable que muchas de las reglas de la división o partición de herencia, las que se refieren a la forma de proceder a la división, son aplicables a la de la cosa común. Ese es el precepto del artículo 413 del Código Civil.

Estudiando más hondamente estos preceptos, vemos que hay casos en que los condueños están impedidos de pedir la división como aparece del artículo 408 del Código Civil. Creemos que se refiere el texto a la división material de la cosa; y nos confirma en esa creencia el contenido del artículo 411 del mismo código, que es como sigue:

"Cuando la cosa común fuere esencialmente indivisible, y los condueños no convinieren en que se adjudique a uno de ellos indemnizando a los demás, se venderá y repartirá su precio."

Ambos artículos se complementan, y salvan al mismo tiempo el derecho de una persona a no permanecer en comunidad de bienes, y la dificultad que a la división se opone por la calidad de indivisibilidad de la cosa común.

Que las fincas rústicas de que se trata son **divisibles, es,** en este caso, un problema que no puede tener una sola y única solución. Lo son los terrenos, cualquiera que sea la explotación a que se dediquen, y la clase a que pertenezcan, ya que al establecer los lotes, para igualar sus valores, habría que fijar compensaciones que son inevitables. Pero aquí hay además bienes que están integrados con las fincas, que con ellas, por ellas y para ellas, tienen un valor, y que por su propia naturaleza son indivisibles, como la bomba para riego, que en las fincas y con ellas vale más de $15,000, y que sin ellas quizá no vale más de un veinte por ciento de lo que costó; aparte de que no es divisible. Esa bomba, como el desvío, las casas, etc., fueron puestos en las fincas por la voluntad de los partícipes, forman parte del inmueble, del que no pueden separarse sin gran detrimento, ocupan una parte del terreno, que no podría dividirse, a menos de destruir el valor de aquéllas, y son por sí, y por esas razones circunstanciales, materialmente indivisibles. Lo son, también, a nuestro entender, las concesiones y tomas de aguas para el riego.

No tenemos necesidad de estudiar los motivos de orden secundario, como la comodidad de la división, etc. Lo que

tenemos que atender es la naturaleza de los bienes, la desaparición de su valor por la división, y la posibilidad de aplicación de la fórmula sustituta de la división material.

En el caso *Oronoz* v. *Román,* 26 D.P.R. 25, este tribunal declaró la existencia de una comunidad de bienes que había de distribuirse; aparecía que la finca objeto de la comunidad tenía un frente muy estrecho a la carretera, y no podría dividirse dando salida a ella a las dos porciones; y se declaró que debía venderse la finca en pública subasta, y repartir el precio entre los condueños. Esta es la forma de división que pudo y debió regir en el caso presente.

Fué, pues, error de la corte de distrito decretar la división material y parcelaria de las fincas rústicas de que se trata en este litigio.

*Debe revocarse* en parte la sentencia apelada, dictándose otra en que se ordene la venta en pública subasta de las fincas rústicas de que se trata en el caso, y de los bienes a ellas anexos, y la división del resultado de la venta entre los partícipes en la comunidad, proporcionalmente a sus participaciones, sin especial condena de costas, *y confirmándose* en los demás extremos.

El Juez Asociado Señor Wolf, disintió. (Véase el prefacio.)